HUGHES v. DELAWARE, L. & W. R. CO.

(District Court, N. D. New York. May 25, 1916.)

1. MASTER AND SERVANT ⬅286(33)—INJURIES TO SERVANT—ACTIONS—FEDERAL EMPLOYERS' LIABILITY ACT.

In an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]) for the death of a switchman run down in the yards of defendant railroad company, the question whether the company exercised due care in backing a train at night without placing lights on the rear car, or stationing a brakeman there with a lantern, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1020; Dec. Dig. ⬅286(33).]

2. MASTER AND SERVANT ⬅286(33)—INJURIES TO SERVANT—DUTY OF CARE.

While it is the duty of a switchman in a railroad yard to avoid trains, it is the duty of the railroad company to take precaution to avoid running him down.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬅286(33).]

At Law. Action by Esther A. Hughes, as administratrix of the estate of Thomas F. Hughes, against the Delaware, Lackawanna & Western Railroad Company. There was a verdict for plaintiff, and defendant moved to set aside the verdict and for a new trial. Motion denied.

Chas. V. Byrne, of Syracuse, N. Y., for the motion.
Cregg Bros. & Rulison, of Syracuse, N. Y., opposed.

RAY, District Judge. Under the federal Employers' Liability Act the plaintiff Esther A. Hughes as administratrix, etc., obtained a ver-

dict in her favor for $3,710 damages for the death of Thomas F. Hughes, alleged to have been caused by the negligence of the defendant railroad company, and which death occurred in the early morning of the 4th day of August, 1914, in the yards of the defendant at Syracuse, N. Y., where Hughes was employed as switchman by the defendant. The court submitted to the jury the question of defendant's negligence in failing, if it did fail, to give proper and suitable warnings of the approach of its switching engine, backing two cars, to the plaintiff's intestate, Thomas F. Hughes, who must have been close by the side of or upon the tracks upon which said engine and attached cars were moving, or in having a man or lights on the moving cars and engine in such position as due care and circumstances required.

The accident occurred at about 4 o'clock in the morning, just before the break of day, and when it was so dark that the employés could see only a car length ahead and that dimly. At the place where the accident happened the freight track runs parallel with the main passenger track and at a distance of only 8 feet therefrom. Other switch tracks lead off from the freight track forming what is known as a ladder track. A switch post with a colored light, but giving but little light, was at the junction of each of these switch tracks to indicate its position. At the time of the accident a long freight or coal train just coming in from Scranton, Pa., was passing and making the usual noise incident to the passage of such a train. On the other side of this main passenger track and running parallel with it, at a distance of $7\frac{1}{2}$ or 8 feet therefrom, was a "home track," or storage track, filled with cars. The main passenger tracks were 4 feet 8 inches from rail to rail, and hence it was nearly 20 feet from the moving cars on the freight tracks to the cars on the "home track." It was the duty of the deceased, Thomas F. Hughes, to attend these switches and throw them. In doing so he was required as matter of course to move up and down, and sometimes across, the tracks. As this freight train was passing, the switch engine with a refrigerator car attached ran upon the "home track," took on another car, moved back upon the main passenger track, and backed down towards the switchman's shanty at a rate of about 5 miles per hour. No light was attached to either end of these moving cars. A man with a lantern was on top of this rear car, but his position thereon was somewhat uncertain. There was a light attached to the tender of the engine, but of course the light was thrown to one side. The bell on the switch engine was ringing. There were grabirons on one side of this rear car and near the rear end, and also a stirrup for the feet, but none on the other. This yard in which these cars were moving was very badly or imperfectly lighted. It was dark in this canal, so to speak, formed by the cars standing on the home track on the one side and the moving train on the freight track on the other.

[1, 2] When last seen alive, Hughes, the plaintiff's intestate, was somewhere in the neighborhood of 100 feet or more northerly of the switchman's shanty. Here he passed a few words with the conductor of the freight train or engine, and then the conductor moved northerly with his back to Hughes and to the other side of the passenger track, and Hughes moved southerly along this passenger track towards his

shanty with a lighted lantern in his hand. The conductor having passed over the track, caught onto the side of one of these moving cars being backed southerly, and almost immediately felt a jolt and gave a signal to the engineer to stop, which was done, and the body of Hughes was found under this train. He was badly injured and dead. His hat or cap was found upon the coupling apparatus at the southerly end of the car. It is fair to infer that Hughes was moving southerly, either by the side of the passenger track and so close thereto that he was hit by the moving car, and knocked down and run over, or that he was moving southerly upon the track when struck by this moving train. No one saw him after he turned away from the conductor, and the man with the lighted lantern on top of this car which struck Hughes testified that he did not see any one, nor anything upon the track. Indeed, it is quite probable that from where he was, owing to the darkness, he could not have seen Hughes, if there, and he had been looking almost directly at him. The jury could find under the evidence that the noise of the passing train on the freight track completely drowned the noise of this approaching train backing down towards Hughes on the passenger track, and the sound of the bell as well. If Hughes turned and looked, it is by no means certain that he could see the man with the lantern on top of the moving car, or the approaching cars.

It was claimed on the trial, and insisted, and the court submitted the question to the jury, that the defendant was negligent in backing this train on the passenger track, under the circumstances and in view of the surroundings and conditions, without having a light either on the side of the rear car nearest Hughes, or a man there with a light, and the jury found that it was negligence to move that train on the passenger track backward towards the switchman's shanty under the circumstances and surrounding conditions without such precaution, which was perfectly feasible. There was some evidence that this had been done on other occasions, one at least; but it is apparent to any intelligent man that a light could have been attached to one side of the rear end of this moving train—that is, the end nearest Hughes—or that a man taking hold of the grabiron and with his foot in the stirrup and holding a lantern could have seen the track for some little distance in front of the moving train as it proceeded towards the shanty. I think the case was properly submitted to the jury, and that the evidence presented a question of fact for the jury to determine, and that the verdict should not be disturbed.

Southern Railway Co. v. Smith (C. C. A. 6th Circuit) 205 Fed. 360, 123 C. C. A. 488, is a case closely in point. It is there held:

"While it is primarily the duty of a switchman in railroad yards to be on the lookout and keep out of the way of moving engines, there is a concurrent or secondary ·duty, independent of statute or rule, on the part of those in charge of such moving engines, to keep such lookout as is reasonably necessary to avoid injury to an employé who may neglect to protect himself, and the extent of such duty is measured by the peculiar circumstances of the case.

"While plaintiff's intestate, who was a switchman in defendant's railroad yards, was walking along a track in the yards at night, he was overtaken and killed by an engine which was 'drifting' or moving slowly behind him on the track, making very little noise. Its headlight was dim, and rendered more so by the electric yard lights, and there was a train passing on an adjoining track,

which covered what noise the engine made. It could have been stopped within 10 feet, but the engineer did not see deceased. Held, that the facts tended to show that the engineer was negligent, and his negligence had a causal relation to the injury, and that a verdict for plaintiff was supported by the evidence."

The facts are very similar. It is by no means certain that Hughes was walking upon the tracks. It was very dark. There is no presumption he was upon the track. He could have been struck, and knocked upon the tracks, and run over, if by miscalculation he stepped too close to them. In the instant case, as in the case referred to, the noise of the engine and cars on the passenger track, which struck Hughes, may have been entirely drowned by the noise of the passing train moving on the freight track, only 6 or 7 feet from Hughes. We must take into account the overhang of these cars, the noise of the freight train, and the intense darkness at this point. The jury well may have found that to move these cars by backing down on the passenger track, under such conditions and surroundings, in the darkness, with no light at all at that end of the train, and only a man with a lantern on top of the car, was negligence. It was, of course, the duty of the defendant and of those moving these cars to keep such lookout as was reasonably necessary to avoid doing injury to an employé who under the circumstances might have neglected to fully protect and care for himself. The extent of the duty depended on the circumstances of the case, and the question was in my judgment one for the jury to determine.

The motion to set aside the verdict and for a new trial is denied.